MiED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MILTON BAYTOPS, #637359,
Plaintiff,

*(Write the full name of each plaintiff who is filing this complaint.  If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**v.**

ELIE MORRISON, Unknown Black, and
JULIE RIDDLE, and BRIAN THOMPSON,
et al. ALPENN County Local News, etc., and
all their their news sponsers.  Defendant(s) /

*(Write the full name of each defendant who is being sued.  If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.  Do not include addresses here.)*

Case:2:20-cv-12786
Judge: Drain, Gershwin A.
MJ: Stafford, Elizabeth A.
Filed: 10-06-2020 At 03:33 PM
PR BAYTOPS V. MORRISON ET AL (NA)

*(to be filled in by the Clerk's Office)*

Jury Trial:  ☑ Yes  ☐ No
*(check one)*

## Complaint for Violation of Civil Rights
## (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

**In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in *forma pauperis*.**

MIED (Rev. 03/11) Prisoner Civil Rights Complaint

# I. PREVIOUS LAWSUITS

Have you filed any other lawsuits in state or federal court relating to your imprisonment?

☑ Yes          ☐ No

If "Yes," complete the following section. If "No," proceed to Part II.

Please list all prior civil actions or appeals that you have filed in federal court while you have been incarcerated.

| | |
|---|---|
| Docket or Case Number: | *Case No. 20-CV-11630* |
| Name of Court: | *EASTERN DISTRICT, Southern Division* |
| Parties (Caption or Name of Case): | *STEVE SLOMIMSKI, et al.,* |
| Disposition: | *Detectives/Officers* |

| | |
|---|---|
| Docket or Case Number: | |
| Name of Court: | |
| Parties (Caption or Name of Case): | |
| Disposition: | |

| | |
|---|---|
| Docket or Case Number: | |
| Name of Court: | |
| Parties (Caption or Name of Case): | |
| Disposition: | |

***Any additional civil actions should be listed on a separate sheet of 8½" x11" paper and securely attached to the back of this complaint.***

MIED (Rev. 03/11) Prisoner Civil Rights Complaint

## II. STATEMENT OF FACTS

State here, as briefly as possible, the facts of your case. Describe how each defendant is involved. Include the names of other people, dates and places involved in the incident. Do not give any legal arguments or cite any cases or statutes.

Plaintiff Baytops States, that The Thunder Bay News Network allowed ELIE Morrison, et al., to publish libel writings, and defamatory photo's that was published through out all of the State of Michigan, and had 230 likes of his Character being slandered views prior to his trial which had defamed his Character; Created decisions made for his Continued detention from a unlawful arrest that has Caused him to suffer being returned back being imprisoned. That Julie Riddles, et al., did so after March 5, 2019 of the date above Statement of Ms. or Mr. Morrison did on approximately 8-2-2019, that was done on many-numerous other dates. Furthermore, Fact is that Brian Thompson, et al., and all their Sponsors acted in Concert to publish Fake News, and Alpena County Prosecutor Ed Black engaged in above libel acts, and defamed Baytops!

## III. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific.  Set forth each claim in a separate paragraph.  If you intend to allege several related claims, number and set forth each claim on a separate 8½" x 11" sheet of paper and securely attach the papers to the back of this complaint.

1. Plaintiff State that his rights Under the United States Constitution his Eight Amendment, Fourteenth Amendment, and article Six has been Violated because his being- personally subjected to Cruel-and inhumane treatment prior to his trial. In a Community where his trial Court proceeding was to take place in The Alpena County Jail before, in the presents of local Community member of all white men and women ethnic groups in county were over 90% of the ethnic groups populations are white and display racism. For all of the before mentioned is, the claim truly made of plaintiff Baytops defamation, and The silently display of behaviors of every one involved in his case racists libel actions, and that libel acts by defendants Caused him to be, returned to Prison. The statements was not true in which proofs, and other statement of Claims set forth in this Complaint will give Courts! See related Claims with additional numbers setting forth each other additional Claims, as; Attachment (A.).

## IV. RELIEF

State briefly and exactly what you want the Court to do for you.

Plaintiff Baytops ask that this Court make a finding that ELIE Morrison, et al., Juile Riddles, et al., Brian Thompson, et al., and

3

MIED (Rev. 03/11) Prisoner Civil Rights Complaint

Ed BLACK, et al., all acted in Concert or individually thats good reasons for granting this tort. Clearly because this is a second according to Torts § 568(1), and Id. @ 568 A Cf. Slander (q.v.). That due to their publishing false slanderous statements of his personal being in a libel faction in numerous ways against the law. Furthermore, grant plaintiff Baytops who is now at this time serving a sentence due to all defendants named above actions. Jointly and severely in excess of $12 Million dollars which has been paid to somebody whose prior case was less severe than Baytops, and whatever this Court deems just and fair. Please apply any other united states Constitutional Rights violations this Court deems fair that fit this situation.

**I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.**

Executed (signed) on ___10/6/2020___ (date).

_Miller Bays_

Signature of Plaintiff

4

Attachment A:

Additional Claims, set forth

1-2 pages;

2. Elie Morrison, et al., acted in concert to entrap Plaintiff Baytops prior to his trial by making false statements in Alpena local News and on web cite of the Thunder Bay News Network of the local Apena County.(See as an offer of proof Exhibit 1. attached as Attachement 1.)  of false statements published prior to Baytops trial.

3. Further claims are that Juile Riddle, et al., of The Archive of MI Headlines, the Alpena news along with Brian Thompson, et al., acted in concert to secure Defendant Baytops unlawful being sentenced I state which false statements created and cured the Alpena community decision while all white men and women of the jury selection was all members of the Alpena community area.(See The Alpena News copied web cite published-publication of false statements used to entrap Baytops, listing false crimes commited against his actions, as an offer of proof in Attachment 2., Exhibit 2.).

4. Brian Thompson, et al., all acted in concert to publish fake news, and all their sponsers involved and those Hunt-Team members who made fake statement to induce a finding of guilt in a Court of Alpena County; By the aforesaid actions of all before mentioned listed defendant's of the Thunder Bay News, The Aplena News, and the Headlines of Mr. Thompson in the Archive Of MI Headlines News which had photo's of his person displayed in them to create hate-violence and a unjust trial.

5. All0 Not one left out statements above have slandered and libeled each and every part of Baytops Court processes with false statements in within the State of Michigan. In that Baytops has been ridiculed and endeavored to be placed in dispute and he has been embarrassed. As now being a Plaintiff Baytops states, Brian Thompson, et al., should not have been allowed to publish his photo in news articles with untrue statements in concert with all other News publishing companies involved listed above. All their actions done of their publishing news companies was create scenes contained in its said documentations were intentionally biased and unfair and intended to portray him as crule, selfish and unfeeling.... Only due to their words used having no personal application to him but their using them untrue publications to clearly be defamatory of his person before his trial was to begain in Appena County. See Attachement 3., Exhibits #3., as an offer of proof).

6. Plaintiff in concluding these claims state that none of the listed parties named in this civil action filed should have listed his photo's next to fake published statements that was not true. Baytops as the Plaintiff in this matter state now that he have recieved more than a few piceses of hate mail/whole time he been back locked up in prison. That he was locked up in Alpena County jail from March 5, 2019 to July 30, 2019 and had recieved 2 pieces of hate mail and since he been in Michigan Department of Corrections he has recieved more hate mail. The people he believe is from ▮▮▮▮ Alpena County or around that area.

Dated: _10/05/2020_____, 2020

Sincerely Submitted by,

/s/ _Milton Byts_____

Milton J. Baytops,#637359
In pro-per
G.Robert Cotton Corr. Fac. (JCF
3510 North Elm Road
Jackson, Michigan 49201

## PROOF OF SERVICE

I _Milton J. Baytops,_ swear under penalty of perjury and (28 U.S.C. § 1746) that the follow statements are true and I mailed by first class mail an orginal copy of this civil action 1983 to be filed in the Eastern District Court of Michigan as mailed from within an institution with a Mailbox rule by placing it in my unit arus hand with expedited legal mail form we both signed so mailed will be placed in out going mail from (JCF) institution.

NOTARY: /s/ _Mary Lou Kalat_____   Petitioner /s/ _Milton J Baytops_____.

Subscribed and sworn to before me a Notary Public,

on this _5th___, day of October 2020

Executed:

MARY LOU KALAT
NOTARY PUBLIC, STATE OF MI
COUNTY OF SHIAWASSEE
MY COMMISSION EXPIRES Sep 18, 2025
ACTING IN COUNTY OF _Jackson_

MARY LOU KALAT
PUBLIC, STATE OF MI
OF SHIAWASSEE
N EXPIRES Sep 18, 2025
UNTY OF

Attachment 1.

Exhibit 1., as an offer of proof



(http://www.wbkb11.com/)

# (http://www.wbkb11.com/)

**About Us**

Contact UsEEOEmploymentProgram GuideStaff

**News**

ArtsCrimeFeaturedHealthHolidaysLocalSchoolSenior Living

Local Programming

Insights Into Northeast MichiganKnowledge BowlTalk of The Town

**Weather**

Weather ArticlesWednesday Weather Wonder

**Community**

Community CalendarContests   Current Running Contests

Advertising

Sports

**Video**

Live StreamWeekly Segments

Crime (http://www.wbkb11.com/category/crime)   Local (http://www.wbkb11.com/category/local)

News (http://www.wbkb11.com/category/news-stories)

# Three heroin overdoses in mid-February lead to three arrests

🕐 1 year ago  Staff (http://www.wbkb11.com/author/station-staff)

**Latest News**

‹ ›

(http://www.wbkb11.com/cold-front-move-in-thursday)

Weather (http://www.wbkb11.com/categor

**230**

SHARES

ADVERTISEMENT

✦ NordicTrack

SPONSORED BY NORDICTRACK

**Commercial X22i Incline Treadmill Series**

Move off your incline treadmill and participate in high-powered cross-training workouts designed to tone and move your entire body. Comes with iFit for Incline Treadmill Series! Treadmills for sale...

The Huron Undercover Narcotics Team (HUNT) launched an investigation into the origin of the substance involved after becoming aware of three overdoses.

Investigators said the overdoses happened between February 15 and February 17.

During the investigation, it was determined that there was a single residence that was the source of the substance, and ultimately, the persons responsible for the distribution of the substances were identified.

On March 4, Aaron Bissonette, 21 of Alpena, was arrested for delivery of suboxone, conspiracy to deliver heroin and maintaining a drug house.

According to investigators, Bissonette was renting an apartment in the 1000 block of West Washington.

HUNT detectives executed a search warrant for Bissonette's residence and called in the Michigan State Police Emergency Services Team due to the high-risk nature of the mission

Detectives said a field test of the substances seized from the residence indicated the possible presence of heroin and fentanyl.

Fentanyl is a synthetic opioid that is considerably more powerful than heroin, and often causes overdoses. Any substance laced with fentanyl is commonly referred to as "fire" as a marketing concept for street level users, and this term generally implies that the substance can cause death.

Milton Baytops, 33 of Flint, and Chasity Wolff , 28 of Lansing, were also arrested in connection to the investigation.

Baytops, who records indicate is on parole with the Michigan Department of Corrections Detroit Office, was charged with two counts of delivery of heroin and conspiracy to deliver heroin.

Wolff was charged with conspiracy to deliver heroin.

HUNT wants to remind everyone that when someone overdoses, help should be sought immediately. Overdoses are too often not reported to emergency responders in a timely manner. Opioid overdoses place victims in respiratory distress which can cause brain damage and/or death within six to eight minutes. The administration of Narcan/naloxone can abate the effects of opioids and negate the overdose, but it needs to be administered as soon as possible.

ADVERTISEMENT

They arrested 28-year-old Chasity Wolff of Lansing and 33-year-old Milton Baytops of Flint. Wolff was charged with conspiracy to deliver heroin. Baytops was charged with two counts of delivery of heroin and conspiracy to deliver heroin. The Flint man was on parole with the Michigan Department of Correction's Detroit Office.

All three were arraigned on Monday. A field substance test of the seized substances from the residence indicated the possible presence of Fentanyl.

H.U.N.T. was assisted by Michigan State Police Emergency Services Team, Michigan State Police's K9 Unit, Michigan State Police Alpena Post, and the Alpena City Fire Department. Citizens are encouraged to contact H.U.N.T. with tips regarding drug dealing at 1-800-573-DRUG.



Tags: fentanyl (http://www.wbkb11.com/tag/fentanyl), H.U.N.T. Team (http://www.wbkb11.com/tag/h-u-n-t-team), heroin (http://www.wbkb11.com/tag/heroin), hunt (http://www.wbkb11.com/tag/hunt), Huron Undercover Narcotics Team (http://www.wbkb11.com/tag/huron-undercover-narcotics-team), michigan state police (http://www.wbkb11.com/tag/michigan-state-police), Michigan State Police Alpena Post (http://www.wbkb11.com/tag/michigan-state-police-alpena-post), Michigan State Police Emergency Team (http://www.wbkb11.com/tag/michigan-state-police-emergency-team), Michigan State Police K9 Unit (http://www.wbkb11.com/tag/michigan-state-police-k9-unit)

Previous **330** Next

SHARES



**Cold front and gusty winds move**
**(http://www.wbkb11.com/cold-f**
**winds-move-in-thursday)**
🕐 14 hours ago   Elie Morrison
(http://www.wbkb11.com/author/emorrison

## Archives

Select Month   ▼

## Categories

Select Category   ▼

*(Photo Courtesy/Michigan State Police) H.U.N.T. arrested three people in relations to three heroin overdoses in mid-February.*

**Alpena, Mich.** — Three overdoses in three days launched an investigation by the Huron Undercover Narcotics Team which resulted in three arrests.

Between February 15th and February 17th, three people overdosed in the city. Enough information was gathered to single out one residence and the people responsible. Authorities arrested 21-year-old Aaron Bissonette of Alpena on March 4. Bissonette was charged  with delivery of suboxone, conspiracy to deliver heroin and maintaining a drug house.

The investigation led to an apartment that Bissonette was renting. According to investigators, Bissonette had been letting a number of associates stay with her. H.U.N.T conducted a search warrant at an apartment in the 1000 block of W. Washington Ave on the evening of March 30

**230**
SHARES

Attachment 2:

Exhibit 2., as an offer of proof

https://www.thealpenanews.com/news/local-news/2019/07/flint-man-gets-5-20-in-drug-trafficking-case/

# THE ALPENA NEWS

# Flint man gets 5-20 in drug trafficking case

ALPENA — A Flint man who brought narcotics to Alpena and used area women to deliver them was found guilty Tuesday and sentenced to five to 20 years in state prison.

Case 2:20-cv-12786-GAD-EAS   ECF No. 1   filed 10/06/20   PageID.16   Page 16 of 48

Three admitted heroin addicts and a state prison inmate gave testimony before the 26th Circuit Court on behalf of the prosecution in this week's jury trial of Milton Baytops, 33, who was accused of delivering illegal narcotics in Alpena.

Baytops found local women via social media, then used them to carry the drugs to purchasers to help him avoid detection, witnesses said. The jury, rejecting the defense's contention that the witnesses were lying, found Baytops guilty on two counts of distribution of an illegal narcotic and one charge of conspiring to deliver narcotics.

According to witness testimony, while he was still downstate, Baytops made contact with Alpena woman Aaron Bissonette, who he knew to be an addict who sold drugs locally herself. Bissonette informed Baytops that Alpena was a good place to make sales and invited him to stay at her Washington Avenue apartment, offering to help him find buyers.

Shortly after Baytops arrived and began selling locally, three overdoses in quick succession caught the attention of the Huron Undercover Narcotics Team, who zeroed in on Bissonette's apartment as the source for all three overdoses.

In early March, HUNT officers arrested Bissonette and another woman, who was making a delivery. Bissonette, initially denying involvement with Baytops, was detained, but the other woman admitted to delivering the drug and agreed to assist HUNT with a sting operation by purchasing heroin from Baytops, allegedly for her own use, using HUNT money.

After the woman successfully returned to HUNT detectives with packages of heroin, an early-morning raid on the apartment by HUNT and the Michigan State Police Emergency Services team resulted in the arrest of Baytops and his girlfriend, Chastity Wolff, of Lansing.

A subsequent search of the apartment resulted in the discovery of the HUNT money in Baytops' wallet, along with his ID. No drugs were located in the apartment.

Bissonette pleaded guilty in June to charges of delivery and maintaining a drug house after being offered a reduced sentence in exchange for her testimony against Baytops. Baytops rejected an offer of three years in prison in exchange for a guilty plea, instead deciding to take his chances before a jury.

Witness Wendy Macleod, one of the women recruited by Baytops and Bissonette as a carrier, recounted walking to a local gas station to meet buyers carrying a stash of heroin given to her by Baytops. She explained the language adopted by drug users and buyers on social media to mask their illegal actions, phrases such as a simple-seeming request for dog food standing in for a proposed drug deal.

The first time she met Baytops, Macleod testified, she overdosed on the heroin he gave her.

But *"the minute I got out of it, I wanted more,"* the witness said.

She had heard that the town was *"hot,"* because of increased activity by HUNT, and advised Baytops to stay out of sight while the women made his deliveries.

Many addicts prefer the more dangerous drug fentanyl over heroin, Macleod said, because of its potency and because they have built up a tolerance to heroin. Very little fentanyl can cause a longer high, but also has the potential to be deadly because users don't know how much to take, the witness explained.

Heroin sold on the street can be pure, or can contain mixed-in ingredients such as baking soda to increase the seller's profit. Fentanol can be mixed in with heroin without the user's knowledge to make it offer a "*better*" high, sometimes causing an overdose.

The string of February overdoses caused by his heroin — which police suspect but have not confirmed was mixed with fentanyl — was treated casually by Baytops. Macleod testified. Drug users, she reported, see overdoses as a sign that the product being used is strong and will give them a "*good*" high, making it more sought-after.

Witnesses reported that Baytops referred to overdoses, including that of one of the women distributing drugs for him, as a method of "*killing off lightweights.*"

The jury of five women and seven men deliberated for about an hour before announcing their unanimous verdict of guilty on all counts. Because Baytops had been offered a plea deal previously, he was able to be sentenced immediately. Judge Michael Mack sentenced the defendant to a minimum of five years in prison, with no credit for time served because Baytops had been on probation at the time of his arrest.

Baytops indicated intent to appeal the jury's decision.

In a final statement before sentencing was imposed, Alpena County Prosecutor Ed Black pointed out Baytops' three prior felony convictions for dealing narcotics, suggesting that a substantial amount of prison time was appropriate.

Flint man gets 5-20 in drug trafficking case | News, Sports, Jobs - The Alpena News

*"We think a strong message needs to be sent to those coming up to our community to deliver drugs: they need to stay away,"* Black said.

Julie Riddle can be reached at 989-358-5693, jriddle@thealpenanews.com or on Twitter @jriddleX.

## Newsletter

### Today's breaking news and more in your inbox

EMAIL ADDRESS

I'm interested in (please check all that apply)

☐ Daily Newsletter    ☐ Breaking News

SUBSCRIBE

Attachment 3:

Exhibit 3., as an offer of proof

## Discover the 2021 Kia Seltoa

Discover the new 2021 Kia Seltos, price of it, and more with these top searches.

Auto Today

| HOME | NE MICHIGAN | SE MICHIGAN | MIDMICHIGAN | NW MICHIGAN | SW MICHIGAN |

# ARCHIVE OF MI HEADLINES
GET THE LATEST LOCAL AND MICHIGAN BREAKING NEWS

| HOME | NE MICHIGAN | SE MICHIGAN | MIDMICHIGAN | NW MICHIGAN | SW MICHIGAN |

LATEST ARTICLES     DECEMBER 4, 2019 | GENESEE COUNTY MAN SENTENCED TO 65-100 YRS IN PRISON FOR MURDER OF HOMER TWP WOMAN

HOME     CRIMES

## Detroit Man given 20 yr Prison Term for Selling Drugs in Alpena

POSTED BY: BRIAN THOMPSON     AUGUST 2, 2019

ALPENA, MI – 33-year-old Milton Baytops, of Detroit, was sentenced on Tuesday July 30th, 2019, after he was found guilty in 26th Circuit Court for the alleged delivery of illegal narcotics in Alpena.

SPONSORED AD

SEARCH ...

9/3/2020

Detroit Man given 20 yr Prison Term for Selling Drugs in Alpena – Archive of MI Headlines

https://archive.miheadlines.com/2019/08/02/detroit-man-given-20-yr-prison-term-for-selling-drugs-in-alpena/

On March 4th, 2019, 21-year-old Aaron Bissonette, of Alpena, was arrested for the delivery of suboxone, conspiracy to deliver heroin, and maintaining a drug house. Arrested with Bissonette was 28-year-old Chasity Wolff, of Lansing.

The investigation revealed Bissonette was renting an apartment in the 1000 block of W. Washington Ave within the City of Alpena. A search warrant was executed on that apartment during the late evening hours of March 5th. Inside of the apartment authorities located **previously convicted drug dealer** Milton Baytops. He was arrested following the execution of the search warrant.

Milton Baytops, who was on parole with the Michigan Department of Corrections **Detroit** Office, was charged with two counts of delivery of heroin and conspiracy to deliver heroin.



Aaron Bissonette was charged with the delivery of suboxone, conspiracy to deliver heroin, and maintaining a drug house.

Chasity Wolff was charged with conspiracy to deliver heroin.

A field test of the substances seized indicated the possible presence of heroin that was laced with Fentanyl. Fentanyl is a synthetic opioid that is considerably more powerful than heroin, and often causes overdoses. Any substance laced with Fentanyl is commonly referred to as 'fire' as a marketing concept for street level users, and the term generally implies that the substance can cause death.

During the jury trial, witnesses stated that Baytops found women on social media and then used them to deliver drugs to purchasers to help him avoid detection.

When Milton Baytops was downstate, he made contact with Aaron Bissonette, who he knew to be an addict and who sold drugs locally herself. Bissonette convinced Baytops that Alpena was a good place to sell drugs. She invited him to stay at her Washington Avenue apartment and also offered to help him find buyers.

Baytops accepted the offer. Not long after he arrived in Alpena, he began selling his deadly mix of narcotics. It would not take long before the Huron Undercover Narcotics Team knew something had changed in the community when three people overdosed in very quick

TRENDING ARTICLES

**Simple Trick To Eliminate Dust**

How this grandma turned her dusty hous into a fresh air paradise without lifting a finger





9/3/2020

Detroit Man given 20 yr Prison Term for Selling Drugs in Alpena – Archive of MI Headlines

successicion. Fortunately all three individuals made full recoveries. There were no known deaths from the narcotics that Baytops was selling.

The investigation by HUNT led them to Aaron Bissonette. After her arrest, Bissonette initially refused to cooperate. The woman who was arrested at the same time as she was immediately began cooperating.

According to **Julie Riddle with the Alpena News**, Wendy Macleod, a witness for the prosecution, testified during the trial that she overdosed on the Heroin that Milton Baytops gave her. Her overdose took a back seat to her addiction. She testified that it did not matter. All she knew was that she wanted more of the drugs.

Macleod advised Baytops to stay out of sight while the women made deliveries of the illegal drugs for him. Macleod was aware that members from the HUNT team were involved in an aggressive investigation but was not certain if the investigation was pointing in Baytops direction.

The jury of five women and seven men listened intently as Wendy Macleod testified about the way that Milton Baytops viewed the overdoses that he was responsible for. Baytops referred to those overdoses as a means of "killing off the lightweights."

Alpena is not an overly affluent area. Many of those who reside in and near Alpena do not make a great deal of money and are not used to having someone like Milton Baytops among them. The residents honestly care for one another. It was very evident that Milton Baytops did not hold those same values and was a danger to the community.

The jury found Milton Baytops guilty on all counts. The jury found him guilty on two counts of distribution of an illegal narcotic and one count of conspiring to deliver narcotics.

He was immediately sentenced by Judge Michael Mack to a prison term of five to 20 years. The defendant was being held in the Alpena County Jail since his arrest in March. Due to the fact that he was on parole at the time that he was taken into custody on March 6th, he was not given credit for the time that he served waiting for his trail to begin. He is considered a habitual offender. He has already indicated that he plans to appeal the verdict of the jury.

**Milton Baytops** has previous convictions for:

- Controlled Substance-Maintaining a Drug House **(Macomb County)**
- Controlled Substance–Creation/Del Counterfeit Subs-Narc/Meth (Macomb County)
- Controlled Substance-Delivery/Manf., Nar/Coc <50 Grams (Macomb County)

SPONSORED AD



- Weapons – Felony Firearms (Wayne County)
- Domestic Violence – 3rd Offense (Kent County)
- Controlled Substance-Delivery/Manf., Nar/Coc <50 Grams – Attempt (Wayne County)

HUNT was assisted with their investigation by the Michigan State Police Emergency Services Team, Michigan State Police K9 unit Alpena Post, troopers from the Michigan State Police Alpena Post and the Alpena City Police Department, and the Alpena Fire Department.

**‹ Previous post**     **Next post ›**

**RELATED ARTICLES**



Electric vehicle public
charging stations first in
state where users will pay
by kilowatt hour



Lansing Police asking for
Assistance in Investigation

**EQUIFAX**

40 States Open
Investigation into Equifax
Security Breach

Alpena County Sheriff's
Office Tips on Crime
Prevention

**Rare '70s Bike We Forgot About**
Here are some of the best motorcycles from

Brake For It

©MI HEADLINES MEDIA, INC

# Michigan Department of Corrections

## Kite Response

| | |
|---|---|
| **Offender #:** 0637359 | **Offender Name:** Baytops, Milton Jerome |
| **Location:** JCF - G. ROBERT COTTON CORRECTIONAL | **Lock:** TB:123:Top:U |

| | |
|---|---|
| **Discipline:** | Medical Records |
| **Received Date:** | 09/11/2020 |
| **Initiated Date:** | 09/11/2020 |
| **Taken By:** | McDevitt, Joan [JM] MSW |
| **Request Type:** | Mental Health Question |
| **Request Summary:** | Reported during last contact that was still having nightmares on the increase in Prazosin. |
| **Plan/Action:** | Hi Mr. Baytops, your doctor said to give the Prazosin more time to reach maximum effectiveness. There is still a window of opportunity with this, so continue to be patient. I know you're doing the best that you can do right now. Take care. Ms. McDevitt LMSW. |
| **Comments:** | |

MILTON BAILORS YOU'S NEAKY OLD COON SHIT HEAD DRUGGIE BIGGIE SMALLS LOOKING SPADE. SAW YOUR BLACK ASS IN THE ALPENA NEWSPAPER WITH YOUR MUDSHARKS WHORES BRINGING YOUR FENTONALL ATH WITHOUT PAYING THE WHITE POWER MAN HERE BOY!! USING OUR WHITE BITCHES IN OUR NEIGHBOR HOOD YOU OLD SNEAKY OLD COON BOY I WOULD OF SHOT YOUR BLACK ASS SPADE DARKIE WITH SOME BUCKSHOT MYSELF BUT MY CREW GONNA BE LOOKING FOR YOU IN PRISON NOW WITH YOUR BLACK COON ASS THEN WHAT? GOOD LUCK SHIT HEAD NIGGER BITCH

J.T.C.H



This people don't know ME why I Am I getting this

Alpena jail this was the 2th or 3th Letter I get from the mail room. 4 something April 2019

# AFFIDAVIT OF TRUTH

I, Milton Baytops #637359 swear under penalty of perjury And (28 U.S.C § 1746) that the following Statements are true to my full Knowledge as I believe as stated below:

(1) That my case trial transcript does not reflect what was stated publicly by numerous news companies. And their personnell employees or employees names are all listed in my Civil action 1983 Complaint.

(2) That the actors involved in my Complaint has caused me irreparable injury Mental health, psychological injury And defamation due to extraordinary Circumstances within Entire matter.

(3) In Concluding this statement of truths, I now state that I have file a Lawsuit about my being beating by police/detectives hunt team members and that this matter is for purpose of my being defamed to help dirty cops. entrap me To prove Fake news was reported see and compare my case transcript with news Articles in Complaints attached transcript Exhibit A. attached to Affidavit

Notary: /s/ Michelle Parsons   Petitions /S/ Milton Baytops
Subscribed and Sworn to before me A Notary public,
on this   6th   , day of October 2020
Executed:

MICHELLE PARSONS
NOTARY PUBLIC, STATE OF MI
COUNTY OF INGHAM
MY COMMISSION EXPIRES Mar 12, 202?
ACTING IN COUNTY OF Jackson

# STATE OF MICHIGAN
## IN THE MICHIGAN COURT OF APPEALS

THE PEOPLE OF THE STATE OF MICHIGAN,

Court of Appeals<br>No.: 350367

Plaintiff-Appellee,

vs.

Alpena County Circuit<br>Court No.: 19-008977-FH

MILTON JEROME BAYTOPS,

Defendant-Appellant.

ALPENA COUNTY PROSECUTOR
MICHIGAN ATTORNEY GENERAL
Attorneys for the Plaintiff-Appellee

MICHAEL A. FARAONE (P-45332)
Attorney for the Defendant-Appellant

RECEIVED by MCOA 1/5/2020 6:34:06 AM

## BRIEF IN SUPPORT OF APPELLANT'S MOTION TO REMAND

### I. Introduction

Appellant offers this brief in support of his motion. Under Remand Issue One, the motion seeks a remand for the purpose of moving for a new trial or evidentiary hearing on claims of ineffective assistance. Under Remand Issue Two, the motion would seek certain audio and video recordings. Under Remand Issue Three, the motion seeks to strike a restitution award for monies police recovered. Under MCR 7.211(A)(3) a supporting brief *may* be filed to support a motion to remand but is not required.

### II. Statement of Facts

Melvin Baytops, of Detroit, was inside a home police associated with drug trafficking. Police found drugs on two local women found leaving the home (Wendy Macleod and Aaron Bissonette) and, under threat of their own criminal liability, police obtained their cooperation and sent one of them (Macleod) back to obtain drugs from Baytops. When it was over, police found no drugs, drug paraphernalia, or firearm inside the home or on the person of Baytops. They did find $200 in buy-

money they had given to Wendy Macleod. Baytops was convicted on two counts of delivery < 50

grams of heroin and one count of conspiracy to do the same.[1]

### A. The Trial

*The Prosecution's Police Witnesses*

During February of 2019, as overdoses occurred in Alpena, police began to surveil the home

of a woman named Aaron Bissonette and noticed suspicious foot traffic and transactions occurring

at a nearby Admiral station (TT I 209). Police arrested Bissonette and Wendy Macleod[2] as they

left the home, and Macleod agreed to twice, within 30-minutes, return to the home to obtain heroin

from Baytops and she did return with heroin (TT I 210-211, 254; lab report).

The prosecutor's theory, then, was that Baytops, knowing Macleod just had police contact, and

that Bissonette was *still in* police custody, remained in the home selling drugs (TT I 128). Other

weaknesses in the case apparent from police testimony include:

- After police obtained the heroin, they delayed entering the home because Macleod told

  them that Baytops had more drugs on the way to Alpena (TT I 222-223). They instead

  watched the home for at least another day, observing nothing. During that delay, Macleod

  continued living inside the home (TT I 119-120).

- When the home was searched, police found their buy-money (two $100 bills) on a dresser

  in the bedroom Baytops used, inside his wallet (TT I 225-226). But as just noted, Macleod

  remained overnight inside the home before it was raided. Also, she was familiar with the

  interior of Baytops' bedroom, as she described a lockbox in the room where the heroin

  and a digital scale were kept (TT I 105).The total amount of cash found inside Baytops'

  wallet appears to have been just over $500 (TT I 248).

RECEIVED by MCOA 1/5/2020 6:34:06 AM

---

[1] MCL 333.7401(2)(a)(IV). A maintaining a drug house charge was dismissed at the close of the prosecution's case, MCL 333.7405(1).
[2] Names are spelled differently throughout the transcript. Appellant uses the most common versions.

- The lead investigator testified that conversations recorded inside the home (never admitted into evidence) were "muffled at best" because the transmitter was underneath Macleod's clothing (TT I 216-217). He heard *no* discussion of heroin, only of prescription Suboxone used by women in the home and talk of collecting bond money for Bissonette, which could explain how the $200 in buy-money went from Macleod's hands to Baytops' wallet (TT I 232-233, II 19).

- Macleod had hidden drugs in her vaginal cavity in the past and no cavity search was done during this investigation (TT I 3, 134, 230). She could have carried heroin in her vagina and brought it into the home – after all, she knew police were watching the group and she admitted to having drugs hidden in the home (TT I 132).

- During the search of the home, no controlled substance or drug paraphernalia were found (TT I 234, 252). Nor was a firearm, which the jury was told the police had been concerned about (TT I 223).

*There's Elements to crimes. The defendant does not meet none of the elements to this crime.*

RECEIVED by MCOA 1/5/2020 6:34:06 AM

***The Testimony of the Three Local Women:***
***Wendy Macleod, Makayla Woodham, and Aaron Bissonette***

Each witness who claimed to have obtained heroin from Baytops in the days before his arrest (all Caucasian and all locals), described themselves as recovering addicts. Macleod testified that she wanted to "stay clean" for her children (TT I 89). Bissonette, who asked Baytops to help her sell drugs from her home claimed that, within days, she demanded that he leave because she wanted to "get clean" (TT I 181, 184). Kayla Woodham, a user Bissonette introduced to Baytops, also described herself as a recovering addict (TT I 145-148).

Macleod claimed that she was high during her purported drug deals with Baytops and that was her excuse for confusion regarding her recollection of details (TT I 113 - lines 8 through 16). Woodham also excused her inability to recall details by citing her drug use (TT I 153 lines 11-17). Bissonette's claims in this regard were only implied.

3

The home in question, where Bissonette lived, is located near an Admiral gas station which she and her friends used as a convenient place to conduct drug transactions before they had any contact with Baytops (TT I 91; Image).



The women had not met Baytops before these events (TT I 92-93, 162, 172). Bissonette met him on Facebook and *she suggested* that he help her sell drugs from her home where she and Woodham would introduce him to local drug users (TT I 175, 179).

Bissonette testified that Baytops traveled to Alpena, as planned, and that he and his girlfriend (Cassidy Wolff) used a first-floor bedroom which shared a bathroom with her own (TT I 177, 190). Bissonette claimed that Baytops gave her heroin to sell and that *from the beginning* she told him police were watching her (TT I 181-182). She deceived Baytops by ingesting, not selling, the drugs he gave her (TT I 176). The total number of days Baytops was in the apartment appears to be less than seven (TT I 192-193).

Macleod also claimed to have warned Baytops about police, telling him to not go outside or he would be arrested, even as she continued (she claimed) to obtain drugs from him in the two days before her arrest (TT I 94-98, 106-108). So, the women were aware of their problems with local police *before* meeting Baytops. Macleod described helping Baytops sell drugs (TT I 101-102). She too hid drugs in the home (TT I 132).

Macleod's involvement in drug-selling predated her meeting Baytops. Macleod testified that her son learned of her prior drug charges on the Internet, and that she soon thereafter began working as a police informant (TT I 89). As discussed below, how that fits chronologically with the contact with Baytops was not made clear.

4

RECEIVED by MCOA 1/5/2020 6:34:06 AM

In any event, in trouble with police, Macleod agreed to twice meet Baytops within a 30-minute period in order to obtain drugs while wearing a recording device (TT I 115, 137, 211). Police gave her papers to make it appear that her arrest was on a child support matter, to put Baytops at ease (TT I 109-111). Then Macleod told police that Baytops had more drugs on their way to Alpena, the police chose to delay arresting Baytops and, during that delay, Macleod continued living under the same roof as Baytops (TT I 121).

All three women cooperated with authorities after their own criminal liability became apparent. Bissonette testified that, before she was arrested, Baytops called and told her the police where coming (TT I 185). She already had an outstanding warrant (TT I 187). She was charged with drug felonies and faced a maximum penalty of 20-years, but in exchange for her testimony received 90-days in jail (TT I 191). Woodham faced charges in an unrelated matter and denied receiving consideration for her testimony (TT I 161-162).

An aspect of the trial that troubles the defense is the prosecutor's focus, through their closing remarks, on the deadliness of heroin and fentanyl and an erroneous inference they allowed the jury to make, that Baytops' drugs were involved in a *death*. Trial counsel never objected and, at one point, seems to encourage the inference. This is the subject of our first claim of error made under Remand Issue One.

### The Jail Inmate's Story

Garrett Joseph Deacons MDOC No. 853357, was serving on a malicious destruction of police property conviction (TT I 196). His prior convictions include three counts of identity theft, three counts of NSF checks, insurance fraud, and receiving and concealing stolen property. *Id*. Deacons testified that, in March of 2019, he shared a cell with Baytops and three other men in the Alpena County Jail (TT I 197). He claimed that Baytops told him that, "He was down in Detroit bringing the drugs up for three individuals to sell the drugs and that was Chasity Wolf, Aaron Bissonette, and Wendy Macleod" (TT I 198).

5

Deacons denied seeing a police report or otherwise knowing the three women (TT I 198-200). He claimed that Baytops told him that he was going to beat the charges because the audio recording was muffled (TT I 201). He brought this information to authorities only after he received a ticket for using meth inside the jail (TT I 199, 202). In cross, Deacons (Caucasian) denied using a racial slur toward someone in the cell and denied that Baytops (African American) confronted him about such an incident (TT I 204).

### The Defense Case

The defense moved for directed verdicts and the prosecution conceded that the lab testing found no fentanyl in the heroin (arguing it didn't matter because Baytops was in possession of heroin), and conceded that Count IV (maintaining a drug house) was supported by insufficient evidence (TT I 257-259). The court struck "Fentanyl" from the charging language and dismissed Count IV (TT I 259-260). Baytops waived his right to testify (TT II 3). The defense briefly recalled the lead investigator, Detective Slominski. Trial counsel left the meaning of that testimony unclear in this record (TT II 5-6).

### Verdict and Sentencing

Baytops was found guilty on all three counts (TT II 45-47). He had no known psychiatric history or physical handicaps. His substance abuse history involved marijuana, cocaine, and opiates. The advisory sentencing guidelines were scored at 19-76 months. On all three counts Mr. Baytops was sentenced to 5 to 20-years in prison as a habitual offender with no jail credit because these cases run consecutive to a parole violation.

Baytops made a timely request for counsel and the undersigned was appointed. On November 21, 2019, the transcripts were filed. This Court has jurisdiction to remand this matter to the circuit court under MCR 7.211(C)(1).

RECEIVED by MCOA 1/5/2020 6:34:06 AM

# ARGUMENT

## REMAND ISSUE ONE

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT TRIAL IN FOUR FORMS: (1) FAILING TO OBJECT (OR HIMSELF CONTRIBUTING TO) IMPROPER TESTIMONY, (2) FAILING TO OBJECT WHEN A FAVORABLE PRE-TRIAL ORDER WAS VIOLATED, (3) FAILING TO PROPERLY CROSS-EXAMINE, AND (4) FAILING TO PLACE COHERANT EXCULPATORY TESTIMONY BEFORE THE JURY. THE ERROR MEETS THE *STRICKLAND* STANDARD FOR RELIEF. REMAND FOR THE PURPOSE OF CONDUCTING A GINTHER HEARING AND A MOTION FOR NEW TRIAL IS WARRANTED.

### I. The Applicable Standards

A criminal defendant's Sixth Amendment right to counsel encompasses a right to the effective assistance of counsel.[3] Establishing ineffective assistance requires the defendant to show: (1) that counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. Prejudice means, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[4]

### II. Application of the Standards

### A. The Failure to Object to Improper Testimony.

Trial counsel failed to object when the prosecutor suggested (without an *adequate* foundation) that Baytops' purported drugs were involved in overdoses, and again when he failed to object when the prosecutor suggested (without *any* foundation) that Baytops' purported drugs were involved in *death*, i.e., "**killing off** lightweights.". This testimony violated the general hearsay rule but, even if it had not, it violated MRE 403. At one point, trial counsel placed the same innuendo before the jury that Baytops heroin caused a death.

---

[3] US Const., Amends VI, XIV; Const. 1963, art 1, § 20; *Powell v. Alabama*, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932)
[4] *People v. Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) quoting *Strickland v. Washington*, 466 US 668, 687; 104 S Ct 2052; 80 LEd2d 674 (1984)

RECEIVED by MCOA 1/5/2020 6:34:06 AM

Specifically, Macleod told the jury, without objection, that she heard of overdoses occurring in the area "right around th[e] time" that the Facebook communication with Baytops began (TT I 92). Fentanyl is added to heroin to increase its efficacy and, "That's what a lot of the addicts preferred," Macleod explained, but doing so increased the risk of overdosing (TT I 99-100). It was revealed later that the *seized* heroin tested negative for fentanyl.

The prosecution asked Macleod whether Baytops cared about the "overdoses," implying they occurred *inside* the home and never clarified that no one was killed:

> Q: Okay. Did Milton care about the overdoses that had occurred at the house to the best of your knowledge?
> A: I don't think so, no.
> Q: Why do you say that?
> A: Because he was still bringing in the same product when – he was planning on bringing the same stuff knowing that the same things was [sic] going to happen. It was – I mean, it was – people were demanding that, too. As an addict myself, you don't really value your life, I don't think, as much as you should. Because you hear like someone – like someone OD'ed over that stuff; like well, I want it. It sounds like it's really strong which is crazy thinking but that's how it works.
> Q: Were there discussions about that between you and Milton?
> A: Yeah. Yep, he did discuss about the OD's with me. You know, he told me that the one particular girl looked really rough and everything like that. But that was about it. He didn't get in to real, real details but he did mention it [TT I 120-121].

Macleod named Olivia McConnell as someone who, "ended up OD'ing and ended up going to jail" (TT I 140-141).

Ms. Woodham also testified that, "you can OD very easily on fentanyl if you take too much of it," but that can be fine, "because then you're getting good stuff [for less money]" (TT I 157-158). Then *trial counsel* indicated that Baytops said, "he was *killing off* a couple of light weights" with his heroin which the witness, Woodham, corrected by testifying that she had heard that phrase, but not from Baytops himself (TT I 163; Emphasis added).

In re-direct the prosecutor stated, "I never asked you about the *killing off* the lightweights, but what was that about?" and Woodham answered that she heard, "something about lightweights and then OD'ing" (TT I 166; Emphasis added). Asked if Baytops "seemed to care" when McKinnon

8

RECEIVED by MCOA 1/5/2020 6:34:06 AM

"OD'ed," Woodham answered, "He didn't sound very sympathetic" (TT I 166). The prosecutor stated, "Well, when you're *killing off lightweights*...is it saying that your heroin is strong?" and Woodham agreed, saying addicts like strong heroin (TT I 167; Emphasis added).

Bissonette also testified that users want strong heroin, that users were overdosing on Baytops' heroin, and Baytops didn't seem to care (TT I 189). The lead investigator testified that he wore gloves when handling the heroin because he was concerned that contact with fentanyl would kill him (TT I 218). The defense recalled that witness who again referenced the expression "killing off a couple of lightweights" (TT II 6-7).

In their closing remarks, the prosecution *emphasized* this testimony:

> [Baytops] knew that people were falling out [overdosing]. He didn't care. He didn't care that Aaron Bissonette was pregnant; he was giving her heroin. He didn't care that people were falling out because of it because it doesn't matter to heroin junkies. They want the stuff strong [TT II 12-13].

The failure to object to these references to Baytops' heroin causing "overdoses" is remarkable in that the overdoses were described as beginning *before* Baytops had any contact with Alpena. An inadequate foundation for the testimony exists, testimony which entered the record in the form of hearsay meeting no apparent exception to the general rule.

The failure to object to – or simply correct – the suggestion that Baytops' heroin caused *death* is yet more remarkable because it entered the record without *any* foundation. At one point, as shown above, trial counsel himself put the same innuendo before the jury. It appears in the record as a provocative and emotionally inflammatory suggestion – the drug dealer from Detroit killing vulnerable locals – without *any* factual basis. This testimony violated the general hearsay rule but, even if it had not, it would have violated MRE 403. The probative value in such testimony, if any, is substantially outweighed by the danger of unfair prejudice.

This is worthy of an evidentiary hearing in which trial counsel can respond, and a decision from the circuit court, on whether a new trial is warranted.

9

RECEIVED by MCOA 1/5/2020 6:34:06 AM

**B. The Failure to Object to the Violation of a Favorable Pre-Trial Order or Obtain a Similar and Applicable Ruling as to the Witness Aaron Bissonette.**

A potential prosecution witness, Ms. Wolfe, had pled guilty to conspiring to sell drugs with Mr. Baytops in this matter. Before trial, she absconded, and the prosecution asked to place before the jury her conviction. The issue was not then, or now, whether the *conviction itself* was admissible (it was) but whether the fact of a judicial finding that she conspired to sell drugs *with Baytops in this matter* was admissible.

The trial court denied the request finding that it would deny Baytops a fair trial (T. 07/26 Motion Hrg. at 5). Generally, evidence of the conviction of an accomplice is inadmissible in the trial of a defendant and its admission may require reversal. *People v. Barber*, 255 Mich App 288, 297; 659 NW2d 674 (2003); *People v. Kincade*, 162 Mich App 80, 84-85; 412 NW2d 252 (1987). See also, "Prejudicial Effect of Prosecuting Attorney's Argument or Disclosure During Trial That Another Defendant Has Been Convicted or Has Pleaded Guilty," American Law Reports, 48 A.L.R.2d 1016 (Originally published in 1956; supplemented).

The prosecutor did not violate said order as to Wolfe but did so as to Bissonette. The jury was told that the conspiracy Bissonette pled to involved *this matter with Baytops* (TT I 193). The prosecutor emphasized this fact during closing, "The only evidence that you have that came from that stand is from Aaron Bissonette, who herself acknowledges, *plead guilty to* making an arrangement to have the defendant bring up heroin." (TT II 8; Emphasis added). And in rebuttal, "Talk to me about Aaron Bissonette. Why's she pleading guilty to this? If she didn't do it, why would do it; why would she plead guilty?" (TT II 21).

Even if the pretrial order did not apply, the same legal principles did. Counsel obtained *sua sponte* from the court a favorable ruling. Instead of seeking its application here, counsel failed to object or take any action regarding the above cited references to the plea-based judicial finding that Bissonette conspired *with Baytops in this matter*.

RECEIVED by MCOA 1/5/2020 6:34:06 AM

### C. The Failure to Properly Cross-Examine (Impeach) a Prosecution Witness.

Garrett Joseph Deacons, MDOC No. 853357, claimed that Baytops made incriminating remarks to him inside the county jail about drug dealing in Alpena (TT I 197). In cross, Deacons (who is Caucasian) denied that Baytops (who is African American) confronted him about using a racial slur; Deacons denied using any racial slur (TT I 204). That is where the matter came to rest.

Trial counsel failed to place into the record that Deacons, according to his MDOC OTIS profile, has a tattoo of a burning cross on his upper right arm. See http://mdocweb.state.mi.us/OTIS2/ otis2profile.aspx?mdocNumber=853357. This evidence could have been found through a simple internet search or a simple question posed to the witness. Our Michigan Supreme Court has recognized that a counsel's failure to impeach a witness with available information may constitute ineffective assistance of counsel. See *People v. Trakhtenberg*, 493 Mich 38, 57–58; 826 NW2d 136 (2012).



[Sample Image]

RECEIVED by MCOA 1/5/2020 6:34:06 AM

In the words of a group that studies these matters:

> The image of the burning cross was popularized as a terror image by the Ku Klux Klan since the early 1900s. Cross-burnings (called "cross-lightings" by Ku Klux Klan groups, to make it seem as if they are not destroying a Christian cross) have long been used as a traditional symbol by Klan groups, used both in Klan rituals as well as in attempts to intimidate and terrorize victims of Klan groups. So widely associated with racial intimidation has this symbol become that most criminal cross-burning incidents do not actually have a connection to a Ku Klux Klan group. The symbol of the burning cross has also transcended the borders of the United States, as tattoo images of Klansmen standing in front of burning crosses are not uncommon among European and other white supremacists. [See https://www.adl. org/education/references/hate-symbols/burning-cross].

While an innocent explanation might exist, and we are *not* accusing Deacons of being a white supremacist, the image of a burning cross is one of the most potent of hate symbols. Therefore, a remand to explore whether the Strickland standards were violated when trial counsel failed to bring this to the attention of the jury is warranted.

11

## D. The Failure to Put Coherent Testimony Before the Jury.

Trial counsel placed incoherent testimony before the jury that may have been exculpatory.

- Macleod testified that she began working as an informant *before* meeting Baytops (TT I 89). Later, she testified that she became an informant *after* meeting Baytops. Trial counsel ignored the inconsistency, but it seems plausible that Macleod's role as an informant *pre-dates* her meeting Baytops' and that Baytops was merely a foil for three people to "work off" their own criminal liabilities. Macleod's references to a recording involving someone named Cooper is also incoherent and unintelligible (TT I 106, 108).

- Inmate Deacons testified that Baytops said the recording police made was unintelligible, as a detail he could have only learned through Baytops (TT I 204). Trial counsel argued this could not be true because he was appointed *after* the purported conversation. But the prosecution countered that Baytops had *previous* attorneys. The meaningful date – when the defense received the tape – was not established.

- The defense recalled Detective Slominski and put before the jury testimony that appears to regard a prior inconsistent statement of a prosecution witness but is utterly incoherent (TT II 5-6).

## E. Analysis of all Four Claims of Error

In 2014, the Supreme Court held, "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."[5] Under the *Strickland* test, a court cannot insulate the review of counsel's performance by calling it trial strategy because the relevant issue

---

[5] *Hinton v. Alabama*, 571 US 263, 274; 134 SCt 1081; 188 LEd2d 1 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.") Cf., *People v. Sclafani*, 132 Mich App 268, 271–72; 347 NW2d 30 (1984) (counsel's advice regarding polygraph could not be sound where counsel was ignorant of polygraph procedures)

12

RECEIVED by MCOA 1/5/2020 6:34:06 AM

is whether counsel's choices were reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.[6]

Based on the existing record, a failure to investigate the relevant law and facts appears to have occurred, as well as the failure to impeach and, at times, to make an intelligible (coherent) record. Counsel's performance appears to have been objectively deficient in manifold ways, and the first prong of *Strickland* is met. On prejudice, there exists a reasonable probability that but for counsel's errors the result of the trial would have been different.[7] The weaknesses in the prosecution's case, as described earlier, are apparent.

### G. Request for an Evidentiary Hearing

An ineffective assistance claim presents a mixed question of fact and law.[8] We respectfully request a Ginther hearing. Trial counsel should be given an opportunity to explain how the analysis in this brief is inadequate. When an evidentiary hearing is necessary to determine facts relevant to a constitutional claim, such as the Sixth Amendment right to the effective assistance of counsel, the state's failure to hold such a hearing can violate Due Process.[9]

### H. Conclusion

These were errors that competent counsel would have avoided and these errors, individually and cumulatively, impacted the jury verdicts. Accordingly, the defendant is entitled to a remand for the purpose of an evidentiary hearing and a motion for new trial.

---

[6] *People v. Trakhtenberg, supra.*, 493 Mich 38, 52 826 NW2d 136 (2012) and *Roe v. Flores-Ortega*, 528 US 470, 481; 120 S Ct 1029; 145 LEd2d 985 (2000) ("The relevant question is not whether counsel's choices were strategic but whether they were reasonable.")

[7] *People v. Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) quoting *Strickland v. Washington*, 466 US 668, 687; 104 S Ct 2052; 80 LEd2d 674 (1984)

[8] *People v. Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012)

[9] *Nevers v. Killinger*, 169 F.3d 352, 373-74 & n. 25 (6th Cir. 1999); *Townsend v. Sain*, 372 US 293 (1963) ("full and fair" hearing required); *Case v. Nebraska*, 381 US 336 (1965) (lack of adequate procedures for hearing federal claims in state court may violate Due Process).

13

RECEIVED by MCOA 1/5/2020 6:34:06 AM

## REMAND ISSUE TWO

IF A REMAND IS GRANTED, DEFENDANT WOULD MOVE THE CIRCUIT COURT FOR A DISCOVERY ORDER REGARDING CERTAIN AUDIO AND VIDEO RECORDINGS MADE BY POLICE.

Access to certain items, two in number, might be necessary if appellate counsel is to provide effective assistance under the Sixth Amendment. Also, a new trial might be required if the absence of a full record prevents the reviewing court from evaluating the regularity of the proceedings. *People v Audison*, 126 Mich App 829, 834-835; 338 NW2d 235 (1983). It is also established that a criminal defendant has a right to a record on appeal. *Hardy v. United States*, 375 US 277; 84 S Ct 424; 11 LEd 2d 331 (1964).

**The Two Items Defendant Wants**

- The audio recording. The testimony at trial was that the recorded conversations of the controlled buy arranged by police was "muffled," and that, "[P]olice didn't hear anything out of the ordinary" (TT II 11). The concern of the defense on appeal is that, not only were the recordings *not inculpatory*, as the parties agreed, but that a jury might have found them *exculpatory* if they had been allowed to hear them.

- The Body Cameras. At sentencing, near the end, defendant argued that he was assaulted by police during his arrest, and that the assault would have been captured on police body cameras (TT II 56-57). While their meaning or relevance to this appeal is not clear at this point in time, we would request them.

14

RECEIVED by MCOA 1/5/2020 6:34:06 AM

## REMAND ISSUE THREE

**THE JUDGEMENT OF SENTENCE INCLUDES AN AWARD OF $200.00 IN RESTITUTION. THIS APPEARS TO BE A MERE CLERICAL ERROR WHICH CAN BE CORRECTED ON REMAND.**

The trial testimony is not ambiguous. Police sent Mcleod into Bissonette's home with two $100 bills to purchase heroin. She returned to police with heroin. The investigating officer testified that the two $100 bills, which they claimed to have photocopied, were later found in Baytops' wallet. The defense has explained that Mcleod had time to place said money in the wallet. But that is not the point under this issue heading. The point is, *police got their buy money back.*

Yet it appears in the Judgement as warranting $200 in restitution. This appears to be a mere clerical error that can be corrected on remand.

### SUMMARY AND RELIEF REQUESTED

**WHEREFORE**, for the foregoing reasons, and those set forth in the accompanying remand motion itself, and accompanying offer of proof, the Defendant-Appellant, Melvin Jerome Baytops, through appointed appellate counsel, thanks this Court for its attention respectfully asks that the Court remand this matter to the circuit court.

Respectfully submitted,

**MICHAEL A. FARAONE P.C.**

/s/ Michael A. Faraone

Michael A. Faraone P.C. (P45332)
Attorney for the Defendant-Appellant
3105 S. Martin Luther King Jr. Blvd. No. 315
Lansing, Michigan 48910
Telephone: (517) 484-5515
e-mail: attorneyfaraone@faraonelegal.com

Dated: January 5, 2020

RECEIVED by MCOA 1/5/2020 6:34:06 AM

## AFFIDAVIT

I, __Milton Jerome Baytops__, prison #537359 swear under penalty of perjury and (28 U.S.C § 1746) that the following is true to the best of my knowledge and belief

1) That the statements made below are from a white man Northern Citizen of the State of Michigan whose signed this Affidavit also below in his own hand writing for to this statement

2) I, __Andrew Kozlowski__, inmate #__473 689__ have been incarcerated in Michigan State prisons, and I've lived __in__ the __Northern__ Michigan area over 20 years

3) The fact is that I have saw and heard alot of perjury and Racial Profiling against people of Color. People with past histories of Criminal Charges Law Enforcement specially target that's not from the U P

4) People from not in the area whose visiting that's of Color, and Mexicans African Americans darker skined people that need to be addressed Consider this as a Declaration of I, __Andrew Kozlowski__, placed in prisoner Mr Baytops, filed Affidavits Notarized sworn to the fact that if you are of Color and police that see you in U P you are going to be arrested harassed

NOTARY: /S/ _____ Petitioner /S/ __Milton Bpts__

Subscribed and sworn to before me a Notary Public on this 5th day of March 2020

Executed.

MICHELLE PARSONS
NOTARY PUBLIC, STATE OF MI
COUNTY OF INGHAM
MY COMMISSION EXPIRES Mar 12, 2026
ACTING IN COUNTY OF

## AFFIDAVIT

1. Milton Jerome Poytons, prisoner #637256 swear under penalty of perjury law (28 U.S.C § 1746) that the following is true to the best of my knowledge and belief

1) That the statements made below are from a white man Northern Citizen of the State of Michigan whose signed this Affidavit below to this Document writing for to this statement

2) I, _Ryan Mahorn_ inmate #973401 have been incarcerated in Michigan State prisons and I've lived in the Northern Michigan area over __1__ years

3) The fact is that I have saw and heard alot of perjury and Racial Profiling against people of Color. People with past histories of Criminal Charges. Law Enforcement specially target this crime from the past.

4) People from not in the area whose visiting those of Color and Mexican African Americans center status people and need to be witnessed. Consider this as a Declaration of I _Ra Mhl_____ placed in prisoner Mr. Poytons files Affidavits Notarized sworn to the fact that if you are of Color and Police that see you that if you are going to be arrested harassed

NOTARY /S/ _Michelle Parsons_ Petitioner /S/ _Milton Boys_

Subscribed and sworn to before me a Notary Public

on this _5th_ day of March 2020

Executed

MICHELLE PARSONS
NOTARY PUBLIC, STATE OF MI
COUNTY OF INGHAM
MY COMMISSION EXPIRES Mar 12, 2025
ACTING IN COUNTY OF _Jackson_

# AFFIDAVIT

I, Milton Jerome Baytops, Prison #637359 Swear under penalty of perjury that the following is true to the best of my knowledge and belief. Under (28 U.S.C.§ 1746)

1) That the statements made below are from a white man Northern Citizen of the State of Michigan whose signs this Affidavit also below in his own hand writing for Attesting to statement.

2) I JACOB BEAUVAIS, inmate #601725 have been incarcerated in michigan State prisons, and I've lived in the Northern Michigan area over 20 years!

3) The fact is that I have saw and heard a lot of perjury and "Racial profiling" against people of Color. People with past histories of Criminal Charges Law eforcment specially target thats not from the U.P.

4) People from not in the area visiting thats of Color, and Mexicans- African Americans darker skins peoples does recieve the punishments worse. Clearly theres a problem that need to be addressed. Consider this as a Declaration of I, JACOB BEAUVAIS, placed in prisoner Mr. Baytops, Filed Affidavit Notarized sworn to the fact that if you are of Color and police that see you in U.P...you are going to be arrested-harassed.

Notary: /s/ Michelle Parsons          Petitioner /s/ Milton Baytops

Subscribed and sworn to before me a Notary on this 5th, of ~~January~~ March 2020

Executed:

MICHELLE PARSONS
NOTARY PUBLIC, STATE OF MI
COUNTY OF INGHAM
MY COMMISSION EXPIRES Mar 13, 2025
ACTING IN COUNTY OF Jackson

IN THE UNITED STATES OF MICHIGAN
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

October  6 , 2020

Office of Clerk of the Court
United States District Court
231 W. Lafayette BLVD. 5th floor
Detroit, Michigan 48226

Milton Baytops, #637359
G. Robert Cotton Correctional Facility (JCF)
3510 N. Elm Road
Jackson, Michigan 49201

RE: Milton Baytops, 637359
New Filed Complaint Under 42 U.S.C. § 1983
Milton Baytops, V. Elie Morrison, et al.

Dear Sir or Madam;

Enclosed please find as my being the Plaintiff new Complaint of one original marked Judges Copy for the Clerk of the Court to process and direct it to whom this Matter Concerns. Also included is my Motion to proceed in pro-per gó a pro-se litigant against all named defendants. In Concluding this Cover letter please note that my notary for my Proof of Service was done on the 5th day of october 2020 prior-sent later after being Copied. I have Copy of Expedited legal mail reciept. Proof of Service is on last page of attached additional Claims. See AFFIDAVIT & Exhibit of Transcript of Case as an offer of Proof !

Sincerely Yours,

/S/ Milton Baytops

Milton Baytops, #637359
In pro-per
Date: October ---, 2020

Milton Bay #637359
B. Robert Cotton Correctional Facility (JCF)
3510 North Elm Road
Jackson, MI 49201

$000.00
Metroplex MI 480 ZIP
WFN 07 OCT 2020M

10/7/2020 (N)

(R3)

To: Clerk of the Court
Office of Clerk of the Court
United States District Court
231 W. Lafayette Blvd 5th Floor
Detroit, Michigan 48226